**2016 UT App 229**

## THE UTAH COURT OF APPEALS

HILARY WING, TIM SHEA, ASPENWOOD REAL ESTATE
CORPORATION, AND ELITE LEGACY CORPORATION,
Appellees,
*v.*
STILL STANDING STABLE LLC,
Appellant.

Opinion
No. 20130768-CA
Filed November 17, 2016

Second District Court, Ogden Department
The Honorable Noel S. Hyde
The Honorable Michael D. Lyon
No. 060906802

Robert J. Fuller, Attorney for Appellant

Robert R. Wallace, L. Miles LeBaron, and Dallin T.
Morrow, Attorneys for Appellees

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

VOROS, Judge:

¶1      In this opinion we address one of four appeals arising from a single lawsuit over a failed real estate deal.[1] The lawsuit involves a dispute over a real estate sales commission. On one hand are a real estate brokerage and related individuals (Plaintiffs); on the other, the property sellers.

---

1. The other three appeals are discussed in *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228 (addressing case 20130746-CA and 20140978-CA) and *Wing v. Code*, 2016 UT App 230 (addressing case 20130854-CA).

¶2    In this appeal, Still Standing Stable LLC (Still Standing) challenges the trial court's pretrial dismissal of Still Standing's three counterclaims against real estate agent Tim Shea and related parties. Still Standing contends, first, that Shea owed and subsequently breached fiduciary duties running to Still Standing; second, that Plaintiffs' negligent conduct and misrepresentations damaged Still Standing; and third, that newly discovered evidence demonstrates that Plaintiffs lacked standing to sue and thus that the court lacked subject matter jurisdiction. The trial court rejected all of Still Standing's claims on the ground that its damages were caused by its own conduct, not Plaintiffs'. We affirm.

BACKGROUND[2]

¶3    A more complete statement of the background facts common to all four related appeals is set forth in *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228. Here, we recite a few of the more salient facts from that opinion along with pertinent facts not recited in that opinion.

¶4    This case involves a parcel of property in Weber County, Utah (the Property). Still Standing purchased the Property from the State of Utah School and Institutional Trust Lands Administration (SITLA). At that time, SITLA informed Still Standing that "there is likely no access" to the Property and that SITLA was "not guaranteeing access."[3]

---

2. When reviewing a trial court's rulings on a summary judgment motion, we recite the facts and inferences in the light most favorable to the nonmoving party. *Poteet v. White*, 2006 UT 63, ¶ 7, 147 P.3d 439.

3. In an earlier appeal arising from this same litigation, our supreme court did not disturb a trial court finding that no access

(continued…)

¶5      After Still Standing purchased the Property, Cathy Code, Chuck Schvaneveldt's wife, advertised it for sale. Tim Shea, a real estate agent, approached Still Standing through Schvaneveldt and Code about some potential buyers (Buyers).[4] Shea was employed by Aspenwood Real Estate Corporation (and later its successor, Elite Legacy Corporation). Shea and Schvaneveldt entered into a For Sale by Owner Commission and Agency Disclosure Agreement (the FSBO).[5]

---

(…continued)

existed to the Property. *See Still Standing Stable, LLC v. Allen*, 2005 UT 46, ¶¶ 2, 5, 122 P.3d 556.

4. Schvaneveldt is the sole member of Still Standing Stable LLC, the entity which owned the Property at issue. Though not precisely accurate, we refer to Still Standing, Code, and Schvaneveldt collectively as Sellers.

5. Difficulty in pinning down the parties to various documents—as well as the lawsuit itself—plagues this litigation. For example, the FSBO, the Real Estate Purchase Contract, and the seller disclosure form all name different sellers. All remaining litigation concerns various parties' rights and duties under the FSBO. In *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, we affirmed the judgment of the trial court that Schvaneveldt bears personal liability for the real estate sales commission, because Schvaneveldt did not sign the FSBO in his representative capacity. So it might seem inconsistent for us to refer to Still Standing as a seller in this appeal. However, because the parties have not asked us to resolve any potential inconsistency, we decide the issues as presented by the named parties in each appeal. In any event, our reference to Still Standing here does not affect our decision that Schvaneveldt has failed to establish that he was not personally liable under the FSBO. *See id.* ¶ 74.

¶6 As further explained in *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, the FSBO contained a brokerage fee clause requiring Schvaneveldt to pay a commission if Sellers "accept[ed] an offer from [Buyers]." That brokerage fee became "immediately . . . due and payable" "[i]f the sale or exchange [was] prevented by default of the Seller." "Default" referred to default on the Real Estate Purchase Contract (the REPC) entered into between Buyers and one or more of the Sellers. Among other requirements, the REPC required Buyers to deposit $25,000 in earnest money; required Sellers to "convey good and marketable title to Buyer at Closing by general warranty deed"; and imposed a 15-day seller-disclosure deadline, a 60-day due-diligence deadline, and a 90-day settlement deadline ahead of closing.

¶7 Initially, Buyers and Sellers each fulfilled their REPC obligations. Buyers deposited $25,000 earnest money with Aspenwood and Sellers made the required disclosures. In the disclosures, Sellers admitted that the property lacked access from a public road, but stated that there was "direct access to the Property through . . . [a] Private Easement." As the closing date approached, Buyers became increasingly concerned about the lack of insurable access to the Property. But they did not object to the seller disclosures during the 60-day "due diligence" window.

¶8 Before closing, Sellers' attorney called Buyers' attorney to inform him that Sellers would be conveying the Property by special warranty deed, not by general warranty deed as called for in the REPC, and that Sellers' escrow and closing instructions would specify that the conveyance would be by special warranty deed. Buyers' attorney responded that a special warranty deed "might be okay if I can get a title policy that's going to guarantee [Buyers] access." But by the time of closing, no title insurance company—including the one hired by Sellers—was willing to

offer a policy that guaranteed access to the Property. The deal fell through when Buyers did not appear at closing.

¶9    At around the same time that Shea and Schvaneveldt were dealing with the Property in Weber County, they entered into a separate agreement regarding property in Salt Lake County.[6] As part of that deal, Shea entered into a Confidential Disclosure Agreement with Still Standing and Stake Center Locating Inc., another LLC operated by Schvaneveldt. Still Standing was listed alongside Stake Center as a party in the first paragraph of the Confidential Disclosure Agreement, but only Stake Center was listed as the "Discloser" above the signature line. The Confidential Disclosure Agreement was signed only by Stake Center's Corporate Vice President; Schvaneveldt, Still Standing's sole member, did not sign the Confidential Disclosure Agreement.

¶10    Finally, Buyers' attorney claimed he sent principal broker Hilary Wing a copy of a letter warning Buyers that "the Seller lied about the access," and that Sellers' actions constituted a "default" and an "outright fraud." Wing did not pass the letter along to Sellers.


ISSUES AND STANDARD OF REVIEW

¶11    Still Standing challenges the trial court's grant of summary judgment, which disposed of all of its counterclaims.

¶12    First, Still Standing contends that, as a matter of law, Shea breached the Confidential Disclosure Agreement and his fiduciary duties as a real estate agent generally when he (1) failed to communicate Buyers' concerns about access to

---

6. Shea had previously acted as Schvaneveldt's real estate agent on other properties.

Sellers, and (2) failed to disclose information about access to Sellers.

¶13 Second, Still Standing contends that, based on Shea's "breaches and misrepresentations, [Still Standing] was led to believe that it was contracting with a cash buyer," and Shea's "failure to communicate material information made a bad situation worse, causing damages to [Still Standing]."

¶14 Finally, Still Standing contends that "the summary disposition of all of [Sellers'] claims should be reversed . . . in light of the misrepresentations Seller discovered after its claims were dismissed." Those misrepresentations, Still Standing claims, show that "none of the plaintiffs . . . had standing to sue . . . for a commission."

¶15 We review a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Jones & Trevor Mktg., Inc. v. Lowry*, 2012 UT 39, ¶ 9, 284 P.3d 630.

ANALYSIS

I. Breach of Fiduciary Duty

¶16 Still Standing first contends that Shea breached his fiduciary duty by not disclosing material information about Buyers—specifically, that in the course of the deal Buyers had begun to think that Schvaneveldt "was not telling us the truth." Breach of a fiduciary duty for nondisclosure requires proof of three elements: (1) the existence of a fiduciary duty to disclose, (2) knowledge of the information, and (3) failure to disclose the information. *Gilbert Dev. Corp. v. Wardley Corp.*, 2010 UT App 361, ¶ 20, 246 P.3d 131.

¶17   Much of Still Standing's briefing on this point reads like a memorandum directed to a trial court; that is, it focuses on the elements of his claim rather than on the ruling of the trial court. Our role as an appellate court is not to adjudicate the merits of a litigant's claims in the first instance but "review of specific rulings made by the trial court." *Law v. Smith*, 98 P. 300, 305 (Utah 1908). Accordingly, we begin our analysis with the trial court's ruling.

¶18   The trial court's ruling did not adjudicate the elements of Still Standing's claim for breach of fiduciary duty outlined above. Instead, it concluded that, even assuming such a breach occurred, Still Standing could not demonstrate that the breach caused its damages. Still Standing's damages, the court concluded, resulted from its refusal to convey the Property by general warranty deed or by special warranty deed with a guarantee of access:

> [I]t strains credulity to think that somebody would fork over four million [dollars] without a general warranty deed or at least some kind of a guarantee under a special warranty deed that there would be an access. . . .
>
> Even if Shea and Re/Max acted improperly in some way as Still Standing suggests, the simple truth is that the actions of Shea and Re/Max did not cause the transaction to fail; therefore, Still Standing cannot prove that [it was] damaged in any way by the actions of Shea or Re/Max.
>
> As a result, even if Shea did not fulfill some duty owed to Still Standing or even if Shea made some misrepresentation to Still Standing, all of Still Standing's claims fail because it cannot prove that Shea and Re/Max caused any damage to Still Standing. The transaction failed because Still

Standing could not guarantee an access to the property. That's the bottom line.

¶19    Although Still Standing argues at length that "Shea and Re/Max acted improperly in some way," our review is confined to the trial court's ruling against Still Standing on causation as a matter of law. As stated by the court in the passage quoted above, and as explained at greater length in our opinion in *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, ¶ 63–65, Sellers defaulted by refusing to convey the Property by general warranty deed as required by the REPC. But Still Standing's brief on appeal does not even mention the general warranty deed issue. Because Still Standing "fails to address the basis of the district court's ruling, we reject this challenge." *See Golden Meadows Props. LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375.

¶20    That said, the underlying problem—indeed, the stated reason Still Standing refused to convey by general warranty deed—was, as the trial court identified, lack of access. Still Standing disputes this, stating that it "has *always* maintained there was access to the property." Still Standing may in fact have always maintained that the property was not landlocked. But the evidence to the contrary was overwhelming. In addition, in the course of this litigation, at least two title insurance companies—including one hired by Still Standing—have examined the property's title, but none has been willing to insure access.

¶21    The REPC required Sellers to convey the Property by general warranty deed; Sellers announced they would convey by special warranty deed; Buyers agreed to accept a special warranty deed only on condition that insurable access was guaranteed; but Sellers never fulfilled this condition. On appeal, Still Standing acknowledges none of this evidence. So again, because Still Standing "fails to address the basis of the district

court's ruling," we reject its challenge to that ruling. *See Golden Meadows Props.*, 2010 UT App 257, ¶ 17.

## II. Negligence and Misrepresentation

¶22 Still Standing next contends that, based on Shea's "breaches and misrepresentations, [Still Standing] was led to believe it was contracting with a cash buyer," and that Shea's "failure to communicate material information made a bad situation worse, causing damages to [Still Standing]."

¶23 As Still Standing acknowledges, and as explained above, the trial court did not adjudicate every aspect of these claims, but instead rejected them on the ground that Still Standing could not prove causation. Still Standing could not prove causation, the court concluded, because Sellers breached the REPC by refusing to convey the Property by warranty deed.

¶24 On appeal, again, Still Standing does not address the general warranty deed issue at all. It does address access, arguing that Plaintiffs produced no evidence "that any notice was given to Sellers' side during the due diligence period demanding an 'access guarantee' or 'access insurance.'" But the record shows that Buyers' willingness to accept something other than a general warranty deed was conditional. Buyers' representative testified in his deposition that Sellers' attorney called him "right around the time of closing saying that we want to execute a special warranty deed which doesn't guarantee us access . . . And I said, well, that might be okay if I can get a title policy that's going to guarantee me access, and they wouldn't do that either."[7] Sellers did not dispute this testimony below. And it was key to the trial court's ruling.[8]

---

7. The difference between a special warranty deed and a general warranty deed "is that grantors of special warranty deeds 'only promise that no title defects have arisen or will arise due to the

(continued…)

¶25 Because Still Standing "fails to address the basis of the district court's ruling," we reject its challenge to that ruling. *See Golden Meadows Props. LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375.

### III. Plaintiffs' Standing and the Court's Jurisdiction

¶26 Finally, Still Standing contends that "the summary disposition of all of Sellers' claims should be reversed . . . in light of the misrepresentations Sellers discovered after [their] claims were dismissed." Those misrepresentations, Still Standing argues, show that "none of the plaintiffs . . . had standing to sue . . . for a commission."[9]

¶27 We reject this claim on two grounds. First, it fails to identify the ruling of the trial court appealed from. Based on the arguments advanced in the companion case *Elite Legacy Corp. v.*

---

(…continued)

acts or omissions of the grantor,' whereas grantors of general warranty deeds promise to defend 'all claims.'" *Mason v. Loveless*, 2001 UT App 145, ¶ 12, 24 P.3d 997 (quoting, respectively, David A. Thomas, 11 *Thompson on Real Property*, § 94.07(b)(2)(i), at 81–82 (David A. Thomas ed., Supp.2000) and Richard R. Powell, *Powell on Real Property* § 81A.06(2)(d)(iii), at 81A-122-23) (emphases omitted).

8. In the trial court proceedings, Sellers did not dispute the factual accuracy of this exchange.

9. This argument relies on the same post-trial evidence at issue in Sellers' standing arguments set forth in two of the other appeals surrounding this dispute—case 20130746-CA and 20140978-CA. *See Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, ¶¶ 24, 50–55.

*Schvaneveldt*, 2016 UT App 228, we assume this claim relates to the trial court's denial of a rule 60(b) motion. For reasons explained in that opinion and many other cases, rule 60(b) motions, especially those filed well after the conclusion of trial, present a host of legal issues. *See, e.g.*, *Yknot Global Ltd. v. Stellia Ltd.*, 2016 UT App 132, 379 P.3d 36, *petition for cert. filed* August 25, 2016 (No. 20160697). Because Still Standing does not identify the ruling appealed from or deal with the issues it presents, we reject this claim. "Briefs must contain reasoned analysis based upon relevant legal authority. An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Sloan*, 2003 UT App 170, ¶ 13, 72 P.3d 138 (citation and internal quotation marks omitted). "Utah courts routinely decline to consider inadequately briefed arguments." *State v. Davie*, 2011 UT App 380, ¶ 16, 264 P.3d 770 (citation and internal quotation marks omitted).

¶28    Second, Still Standing's third claim of error in this appeal is legally identical to Schvaneveldt's first claim of error in *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228, which we rejected. Accordingly, we reject Still Standing's claim here for the reasons explained in that case. *See* 2016 UT App 228, ¶¶ 32–55.

CONCLUSION

¶29    For the foregoing reasons, the judgment of the trial court is affirmed.

_____