**2016 UT App 230**

### THE UTAH COURT OF APPEALS

HILARY WING,
Appellant,

*v.*

CATHY CODE,
Appellee.

Opinion
No. 20130854-CA
Filed November 17, 2016

Second District Court, Ogden Department
The Honorable Noel S. Hyde
The Honorable Michael D. Lyon
No. 060906802

L. Miles LeBaron and Dallin T. Morrow, Attorneys
for Appellant

Karra J. Porter and Phillip E. Lowry, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

VOROS, Judge:

¶1     In this opinion we address one of four appeals arising from a single lawsuit over a failed real estate deal.[1] The lawsuit involves a dispute over a real estate sales commission. On one hand are a real estate brokerage and related individuals (Plaintiffs); on the other, the property sellers.

---

1. The other three appeals are discussed in *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228 (addressing case 20130746-CA and 20140978-CA) and *Wing v. Still Standing Stable LLC*, 2016 UT App 229 (addressing case 20130768-CA).

¶2    In this appeal, Hilary "Skip" Wing, a principal broker for Aspenwood Real Estate Corporation and its successor, Elite Legacy Corporation, challenges a trial court ruling ordering him to pay defendant Cathy Code's attorney fees. We affirm.

BACKGROUND

¶3    A more complete statement of the background facts common to all four related appeals is set forth in *Elite Legacy Corp. v. Schvaneveldt*, 2016 UT App 228. Here, we recite a few of the more salient facts from that opinion along with pertinent facts not recited in that opinion.

¶4    Plaintiffs in this action sued to recover a real estate sales commission owed (they believed) under a For Sale By Owner Agreement (the FSBO). They originally named Still Standing Stable LLC (Still Standing) as the only defendant but later added Charles Schvaneveldt and Code. The original plaintiffs were identified as Tim Shea and Re/Max Elite, an assumed name. Early in the litigation, Code, Charles Schvaneveldt, and Still Standing (the Defendants) repeatedly argued that, without a principal broker, Plaintiffs lacked standing to sue. In response, Wing—a licensed principal broker—and two corporations joined as Plaintiffs. Defendants thereafter temporarily abandoned those standing arguments.

¶5    The court determined on summary judgment that Plaintiffs had earned a commission but allowed the case to proceed to trial on the question of who owed the commission. Before trial, the court, without objection from Schvaneveldt or Code, dismissed Still Standing from the case. At the close of evidence, Code moved for a directed verdict, which was granted. These rulings left Schvaneveldt as the last remaining defendant, and the jury found that he owed the commission.

¶6 Having prevailed at trial, Code sought, and the court granted, an award of attorney fees under the FSBO. Next, the trial court addressed who owed the fees. Wing maintained that he was not personally liable, because he had never claimed to be a party to the FSBO. Instead, he became a plaintiff solely to cure any standing defect. But the trial court ruled that because Wing "asserted a cause of action against Ms. Code based upon the FSBO, and because Ms. Code prevailed on that cause of action, Mr. Wing, like the other plaintiffs, is liable for Ms. Code's attorney fees."

¶7 The trial court explained that "[t]he reasons that Plaintiffs chose to add Mr. Wing as a party in this action . . . are immaterial. Mr. Wing must accept the natural consequences of naming himself as a plaintiff." The court also relied on the fact that Wing had sought and received an attorney fee award under the very provision of the FSBO he later maintained did not apply to him. Wing appeals.

ISSUES AND STANDARDS OF REVIEW

¶8 Wing challenges the trial court's ruling that he, along with the other plaintiffs, was personally liable to pay Code's attorney fees. He raises three claims of error with respect to the ruling.

¶9 First, he contends that he cannot be personally liable under the Reciprocal Fee Statute and the FSBO because he "was not a party to the FSBO and never asserted that he was a party to it." Second, he contends that he was involved in the lawsuit in a representative capacity only. Third, he contends that he should not be personally liable for attorney fees under the FSBO because Utah law does not allow him to seek attorney fees under the FSBO.

¶10 A trial court's decision whether the Reciprocal Fee Statute applies to a request for attorney fees is a question of law

reviewed for correctness. *Bilanzich v. Lonetti*, 2007 UT 26, ¶¶ 9–10, 160 P.3d 1041. Interpretation of a contract is likewise a question of law reviewed for correctness. *Shiozawa v. Duke*, 2015 UT App 40, ¶ 24, 344 P.3d 1174.

ANALYSIS

I. Party Status

¶11 Wing first contends that he cannot be personally liable for Code's attorney fees because he "was not a party to the FSBO and never asserted that he was a party to it."

¶12 "In Utah, attorney fees are awardable only if authorized by statute or by contract." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). Here, Plaintiffs asserted a claim for breach of the FSBO. Section 8 of the FSBO grants attorney fees to the prevailing party:

> 8. ATTORNEY FEES. Except as provided in Section 7 [dispute resolution via mediation], in any action or proceeding arising out of this Commission Agreement involving the Seller and/or the Company, the prevailing party shall be entitled to reasonable attorney fees and costs.

Under Utah's Reciprocal Fee Statute, courts may award attorney fees to the prevailing party of a contract dispute so long as the contract provided for the award of attorney fees to at least one of the parties:

> A court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written

contract, or other writing allow at least one party to recover attorney fees.

Utah Code Ann. § 78B-5-826 (LexisNexis 2012). Our supreme court has held that "an action is 'based upon' a contract under the statute if a 'party to the litigation assert[s] the writing's enforceability as basis for recovery.'" *Hooban v. Unicity Int'l, Inc.*, 2012 UT 40, ¶ 22, 285 P.3d 766 (alteration in original) (quoting *Bilanzich*, 2007 UT 26, ¶ 15). That condition results when a litigant "rested his claims in the district court on a right to enforce the [contract]" even if he is ultimately "deemed a stranger to the contract" with "no rights to enforce it or obligations under it." *Id.* ¶¶ 22, 24.

¶13 Wing contends that he cannot be personally liable for Code's attorney fees because, unlike the losing party in *Hooban*, he "has never asserted that he was a party to a contract." However, the trial court based its fee award against Wing on the fact that Wing "added himself as a plaintiff" to this lawsuit. And, as the trial court explained, Wing sought and won an attorney fee award against Schvaneveldt under the very provision he argues does not apply to him:

> Mr. Wing cannot receive all of the benefits of the FSBO without accepting all of the risks associated with that agreement. Here, Mr. Wing successfully pursued an action against the defendant [Schvaneveldt], and based on the very attorney fees provision he now seeks to avoid liability for, recovered attorney fees against [Schvaneveldt]. Allowing Mr. Wing to both recover fees from Mr. Schvaneveldt and avoid liability for Ms. Code's attorney fees would be incongruous.

In seeking fees against Schvaneveldt, Wing's counsel argued, "We think [Wing] gets them because statutorily, he's allowed to enforce that contract," and, "[Wing] is, in fact, a party, able to

enforce the FSBO . . . .” Thus, Wing was a party to a cause of action based solely on a contract, prevailed in that cause of action, and was awarded attorney fees under the very contract provision he now claims does not apply to him.

¶14    We conclude that Wing’s position is weaker, not stronger, than Hooban’s. Like Hooban, Wing “rested his claims in the district court on a right to enforce the [contract]”; but whereas Hooban was ultimately ruled to have “no rights to enforce” that contract, Wing did successfully enforce the contract and was awarded attorney fees under it. *See Hooban*, 2012 UT 40, ¶¶ 22, 24. Accordingly, we affirm the ruling of the trial court on this issue.

## II. Representative Capacity

¶15    Wing next contends that he was involved in the suit in a representative capacity only. He argues that both the record and the trial court’s findings establish that he “was not personally involved.”

### A.    The Record

¶16    Wing, a principal broker, was added as a plaintiff to this lawsuit in response to Defendants’ assertion that none of the entities named as plaintiffs was qualified to sue for a commission under section 61-2f-409 of the Utah Code. Subsection (2)(b) of that statute seems to indicate that only a principal broker may sue to recover a real estate commission:

> An action for the recovery of a fee, commission, or other compensation may only be instituted and brought by the principal broker with whom a sales agent or associate broker is affiliated.

Utah Code Ann. § 61-2f-409(2)(b) (LexisNexis 2011). *But see Id.* § 61-2f-409(1)(b)(iii) (stating that a person may bring an action for the recovery of a commission if the person is “an entity that,

under the records of the Division of Real Estate, is affiliated with a principal broker").

¶17 Wing does not argue that section 409's requirement may be satisfied by a broker suing solely in a representative capacity.[2] He does not point to any legal document identifying him as acting solely in a representative capacity. And he does not claim that he was identified in the case caption or elsewhere in the pleadings as suing solely in his representative capacity. Rather, he supports his argument merely by citing his own deposition testimony where he stated that he was not seeking any personal money from the lawsuit.

¶18 But Wing has not shown that the legal question of whether a litigant is suing in a personal capacity or a representative capacity may be resolved simply by asking him, even under oath. Furthermore, Code cites numerous statements on the record from Wing's counsel asserting that Wing was to personally receive the first $10,000 of any recovery and thus "has a stake" in the lawsuit and a "dog in this fight." In short, Wing has not demonstrated that the record establishes that he sued Defendants in a representative capacity only.

B.     The Trial Court's Findings

¶19 Wing contends that the trial court's findings establish that he sued in a representative capacity only. On a motion for clarification, the trial court did appear to rule that Wing's role was representative only:

> [T]o the extent that [Wing] is identified as a party in these proceedings, or as the holder of any claims, that identification is [Wing], in his representative capacity, as principal broker for the

---

2. Nor do we express an opinion on that question.

brokerage, or as an agent or representative of the brokerage, and does not represent his individual and personal ownership of those claims.

However, Code argues that this ruling had a limited scope, specifically, that it dealt with Wing's role only as a judgment creditor, not as a judgment debtor. And in oral argument on appeal, counsel for Wing acknowledged that this ruling did not implicate Wing's status as a judgment debtor.

¶20     For this reason, we conclude that the quoted finding does not bear on the question on appeal, namely, whether Wing personally owes the judgment entered against him. Wing's claim of error based on that finding accordingly fails.

### III. The FSBO

¶21     Finally, Wing contends that he should not be personally liable for attorney fees under the FSBO because Utah law does not allow him to seek attorney fees under the FSBO.

¶22     In support of his claim, Wing relies on *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, 100 P.3d 1200. *Fericks* does not control the present case. *Fericks* held that a seller's real estate agent may not recover attorney fees under the fee provision of a real estate purchase agreement. The supreme court reasoned that "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit." *Id.* ¶ 24. But here, the attorney fee provision at issue appears in the FSBO, not the REPC. And Plaintiffs, including Wing, sued as principals to enforce their rights under the FSBO.

¶23     Wing also argues that he should not be personally liable for Code's attorney fees because he "was added to the case only to bolster Elite Legacy's and Aspenwood's claim to standing." He explains that he became a plaintiff only to put a stop to

Defendants' repeated standing motions, not because section 61-2f-409 actually required the broker—as opposed to the brokerage—to bring suit. Thus, he reasons, it would be "unjust" to hold him personally liable.

¶24 Because Wing did in fact join the lawsuit as a plaintiff, we need not decide whether Wing's presence as a plaintiff was essential to satisfy section 61-2f-409. But we agree with the trial court that "[t]he reasons that Plaintiffs chose to add Mr. Wing as a party to this action . . . are immaterial. Mr. Wing must accept the natural consequences of naming himself a plaintiff."

¶25 Finally, Wing acknowledges that Code should receive an award of attorney fees as a prevailing party, just as Plaintiffs received an award of attorney fees under the same provision of the FSBO against Schvaneveldt. But he argues that it is unfair to leave him on the hook for Code's fees when he "will never collect a dime" of the fee award against Schvaneveldt, because the latter "award goes exclusively" to the corporate plaintiffs.

¶26 Wing relies on an inconsistency created by the October 2014 ruling of the trial court. That ruling in effect treats Wing as a representative for purposes of collecting the fee award from Schvaneveldt. However, as Wing's counsel has acknowledged, the court explicitly limited its ruling to Wing's role as a judgment creditor, stating, "There is no ruling with respect to Mr. Wing's status as a judgment debtor." While we might disagree with the trial court's ruling that created this inconsistency, Wing has shown no legal reason to resolve the inconsistency in favor of his representative capacity rather than in favor of his personal capacity, and we see none. We therefore decline to do so.

## IV. Attorney Fees on Appeal

¶27 Code seeks an award of attorney fees on appeal on the ground that the FSBO awards attorney fees to the prevailing

party. When under a contractual fee provision "a party is entitled to attorney fees below and prevails on appeal, that party is also entitled to fees reasonably incurred on appeal." *Utah Transit Auth. v. Greyhound Lines, Inc.*, 2015 UT 53, ¶ 64, 355 P.3d 947. Code received attorney fees below and has prevailed on appeal. Accordingly, we award Code reasonable fees incurred in connection with this appeal in an amount to be determined by the trial court.

CONCLUSION

¶28    For the foregoing reasons, the judgment of the trial court is affirmed and the case is remanded for a determination of Code's reasonable attorney fees.

———————