2010 UT App 257

**GOLDEN MEADOWS PROPERTIES, LC, aka Golden Meadows Properties, LLC, Plaintiff and Appellee,**

v.

**Michael STRAND and Cari Allen, Defendants and Appellants.**

No. 20080838–CA.

Court of Appeals of Utah.

Sept. 23, 2010.

Michael W. Strand and Cari Allen, Centerville, Appellants pro se.

James C. Swindler, Salt Lake City, for Appellee.

Before Judges ORME, THORNE, and VOROS.

## MEMORANDUM DECISION

VOROS, Judge:

¶ 1 Plaintiff Golden Meadows Properties, LC, brought an unlawful detainer action against Defendants Michael Strand and Cari Allen (collectively, Strand) to remove Strand from a residence in Bountiful, Utah (the

Property). Strand responded with a counterclaim for quiet title, constructive trust, and adverse possession. The district court granted summary judgment to Golden Meadows.[1]

¶2 Strand challenges the district court's grant of summary judgment to Golden Meadows. He contends that the district court erred in denying his discovery motions and in striking fourteen affidavits. He alleges that had the discovery continued, or had the affidavits been admitted, he would have been able to show that a genuine issue of material fact existed as to the true ownership of the Property, thus precluding summary judgment. We affirm.

█ ¶3 On some issues, Strand argues that because he is a pro se litigant, he should have been granted more leniency or given the opportunity to correct his errors. "[A] party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar. Nevertheless, because of his lack of technical knowledge of law and procedure, [a pro se litigant] should be accorded every consideration that may reasonably be indulged." *State v. Winfield,* 2006 UT 4, ¶19, 128 P.3d 1171 (internal quotation marks omitted). Actually, Strand has displayed a technical knowledge of law and procedure that belies his nonlawyer status. He is a very experienced pro se litigant who has proven himself quite capable of navigating the intricacies of civil procedure. Moreover, our review of the record here indicates that Strand has been accorded every consideration that may reasonably be indulged.[2]

█ ¶4 This case began as an unlawful detainer action. "The basis of a suit in unlawful detainer is unlawful possession.... [O]ne of the primary purposes of the unlawful detainer statute is to provide a speedy resolution on the issue of possession...." *Osguthorpe v. Wolf Mountain Resorts, LC,*

2010 UT 29, ¶23, 232 P.3d 999 (citation omitted). Resolution of this matter has been anything but speedy, however. The litigation has spanned three years and spawned twenty-one volumes of pleadings and transcripts. We commend the trial judge for his excellent work managing the flood of documents, motions, and arguments.

## I. The District Court Did Not Abuse Its Discretion in Denying Strand's Discovery Motions.

¶5 As an initial matter, Strand argues that Golden Meadows lacks standing to bring this claim. In doing so, he attempts to raise various questions associated with the decades-long business affairs involving Strand, Neuman Petty individually, Nupetco, and Golden Meadows. He argues that "[t]here were fact questions as to the source of funds used in the transactions, for payment of the taxes and, whether [Golden Meadows] was an alter ego of Neuman Petty or its parent corporation, as would allow piercing of [the] corporate veil, precluding summary judgment." He then argues that "[i]t was clearly improper for the Trial Court to deny [his] discovery motions seeking information about the source of funds used." [3]

¶6 Strand moved the district court to compel Golden Meadows to answer certain interrogatories, to suspend the scheduling order, and to stay the proceedings until the discovery issues were resolved. The district court denied Strand's motion to compel, concluding it "amount[ed] to an abuse of the discovery process," and also denied Strand's motion to suspend the scheduling order. The district court's denial of Strand's motion to compel mooted Strand's motion to stay.

█ ¶7 "We review the trial court's denial of the motion to compel under an abuse of discretion standard." *Pack v. Case,* 2001 UT App 232, ¶16, 30 P.3d 436. Strand com-

---

1. This decision is issued concurrently with another appeal from the same district court case. *Golden Meadows Props. v. Strand,* 2010 UT App 258, 241 P.3d 371, is an appeal from post-judgment motions.

2. On appeal, Strand's briefs, though thoroughly researched, lack focus and coherence and are

littered with unsupported factual allegations. Except as noted, we look past these briefing excesses in view of Strand's pro se status.

3. Strand does not deny that Golden Meadows held record title to the Property at the time it initiated this unlawful detainer action.

plains about the district court's actions but offers us no basis to reverse them. Rule 24 of the Utah Rules of Appellate Procedure provides that "[t]he argument shall contain the contentions and reasons of the appellant with respect to the issues presented." Utah R.App. P. 24(a)(9). Strand's brief does not contain his contentions or reasons that the district court abused its discretion. Instead, he repeatedly speculates on what evidence might have emerged from further discovery. This speculation, without more, does not demonstrate that the district court abused its discretion in the context of this case. Accordingly, we affirm the district court's denial of Strand's motion to compel discovery. *See State v. Green*, 2005 UT 9, ¶ 11, 108 P.3d 710 ("A brief which does not fully identify, analyze, and cite its legal arguments may be disregarded or stricken by the court." (internal quotation marks omitted)).

## II. The District Court Did Not Abuse Its Discretion in Striking Strand's Affidavits.

¶ 8 Strand resisted summary judgment by asserting that he held an equitable interest in the Property as beneficiary of either an express trust or a constructive trust. In support of this contention, Strand offered fourteen affidavits to the district court. The district court struck the affidavits[4] for a variety of reasons, including being untimely (in violation of the scheduling order), violating rule 702 of the Utah Rules of Evidence, lacking foundation, being irrelevant or conclusory, and containing hearsay. On appeal, Strand asks us to reverse the district court's ruling striking the affidavits.[5]

### A. The Affidavits of Strand and Allen and the Four February 28 Affidavits Stricken as Untimely

¶ 9 Golden Meadows filed its Motion for Summary Judgment on January 15, 2008, in compliance with an October 24, 2007 scheduling order. Strand's opposition was due on January 30, 2008. *See* Utah R. Civ. P. 7(c)(1). Instead of filing a memorandum in opposition, Strand filed a motion to enlarge time to respond, a motion to stay, and a motion to compel Golden Meadows to answer interrogatories to which it had objected. After a hearing on the matter, the district court ordered that "[Strand] shall file [his] papers in opposition to [Golden Meadows'] Motion for Summary Judgment not later than February 20, 2008." On February 19, Golden Meadows' counsel told Strand that he (Golden Meadows' counsel) would not object to Strand's failure to file by the close of business on February 20 if the appropriate documents were delivered by midnight. When that did not happen, Golden Meadows' counsel told Strand that he would not object if the documents were delivered on February 21, and then that he would not object if the documents were delivered by 9:00 a.m. on February 22. Strand's and Allen's affidavits arrived at 10:00 a.m. on February 22. The last four affidavits, those of Daniel W. Jackson and Charles Dooley, and the supplemental affidavits of Strand and Allen, were not served until February 28.

¶ 10 Strand argues that his failure to comply with the scheduling order should be overlooked because Golden Meadows was not prejudiced by the receipt of the affidavits. He also argues that despite his noncompliance with the court's order, no rule of civil procedure bars the filing of untimely affidavits. For example, he notes that rule 7(c)(1) of the Utah Rules of Civil Procedure bars the filing of additional memoranda but does not prohibit filing additional affidavits. *See* Utah R. Civ. P. 7(c)(1).

¶ 11 District judges "have broad discretion in managing the cases assigned to

---

4. The district court struck portions of five affidavits and struck the other nine affidavits in their entirety. The remaining portions are unhelpful to Strand's case. For simplicity, we refer to them as if they were struck entirely.

5. Strand argues that by striking the affidavits the district court denied him due process. This constitutional claim is inadequately briefed. Among other flaws, Strand's brief does not cite to any portions of either the federal or state constitutions in its argument section. "[W]e will not engage in constructing arguments out of whole cloth on [the appellant's] behalf." *See Parsons v. Barnes*, 871 P.2d 516, 519 n. 2 (Utah 1994) (internal quotation marks omitted); *see also* Utah R.App. P. 24(a)(9).

their courts." *Posner v. Equity Title Ins. Agency*, 2009 UT App 347, ¶ 23, 222 P.3d 775, *cert. denied*, 230 P.3d 127 (Utah 2010). Rule 16(d) of the Utah Rules of Civil Procedure allows a district court to impose various sanctions if "a party . . . fails to obey a scheduling or pretrial order." Utah R. Civ. P. 16(d). Among the permitted sanctions are "prohibit[ing] the disobedient party from . . . introducing designated matters in evidence," "strik[ing] pleadings or parts thereof," and "dismiss[ing] the action or proceeding or any part thereof." *Id.* R. 37(b)(2)(B)-(C). We review the imposition of sanctions only for an abuse of discretion. *See Bodell Constr. Co. v. Robbins*, 2009 UT 52, ¶ 16, 215 P.3d 933.

¶ 12 There are, of course, outer limits to a district court's discretion in such matters. *See, e.g., Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 19, 235 P.3d 791 ("[T]he trial court's discretion, while expansive, is not unlimited." (citation omitted)). Here, however, Strand has not made the showing required to establish that the district court exceeded those limits.

B. The Affidavits Stricken as Irrelevant, Conclusory, or Lacking Foundation (Including Lois Strand Williams's)

¶ 13 Strand contends that the district court erred in striking several affidavits, or portions thereof, as irrelevant or lacking foundation. Affidavits supporting or opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Utah R. Civ. P. 56(e). Accordingly, affidavits containing allegations that "are not based on personal knowledge, lack foundation, are conclusory, and contain hearsay" may be stricken. *Murdock v. Springville Mun. Corp.*, 1999 UT 39, ¶ 27, 982 P.2d 65. Similarly, "[a]ffidavits reflecting an affiant's unsubstantiated conclusions and opinions are inadmissible." *Cabaness v. Thomas*, 2010 UT 23, ¶ 33, 232 P.3d 486. "A district court's refusal to consider evidence or to exclude

evidence is reviewed under an abuse of discretion standard." *Id.* ¶ 31.

¶ 14 Here, Strand challenges the district court's order striking at least three sentences of the affidavit of Strand's former wife, Lois Strand Williams. Strand argues that Williams's testimony was "competent admissible evidence based on personal knowledge." The district court struck this testimony "on the grounds stated in [Golden Meadows'] Memorandum in Support of Motion to Strike Five Affidavits." Those grounds were essentially that the statements should be stricken for lack of foundation.

¶ 15 We see no abuse of discretion in the district court's having stricken conclusory averments as to what other people agreed to or understood, what rent others paid or requested, and other conclusions and opinions not based on the personal knowledge of the affiant. We therefore affirm the district court's striking of Williams's affidavit.

¶ 16 As to the others, Nathan Drage's affidavit was stricken because his "concerns" were irrelevant to the issues, some of his testimony was based on hearsay, and some of his testimony "attempt[ed] to provide a legal conclusion by indirection." Maua Aiono's affidavit discussed an interaction between Strand and a third party. It was stricken for lack of foundation. Susan Slattery testified without foundation about business transactions between Petty and various unrelated third parties, testified about Petty's reputation, and discussed what "everyone else" wanted to do. Because Slattery cannot speak to the intentions of others, her affidavit was stricken as being irrelevant and lacking foundation. Finally, Sharmin Zyska's affidavit was stricken due to lack of foundation, lack of competence, and Strand's failure to designate her as an expert witness. She testified about "main areas of concern" of Strand and Petty, but without foundation. Finally, she testified as to what other unnamed persons "knew." Having reviewed the affidavits in question, we see no abuse of discretion in the district court's rulings with respect to them.[6]

---

6. The general tenor of these affidavits is to make broad assessments of people's character and re-lationships or to recite anecdotes about Strand or Petty or both. Consequently, they had mar-

## C. The Affidavits Stricken for Failure to Comply with Rule 702 of the Utah Rules of Evidence (Including the Affidavits of Joe Scovel and Michael Blackburn)

¶ 17 The district court struck the affidavits of purported experts Joe Scovel and Michael Blackburn because their testimony did not comply with rule 702 of the Utah Rules of Evidence. On appeal, Strand argues that the district court erred in striking the affidavits "even though they demonstrate exceptions to title and the parties['] knowledge of Strand[']s claims, including LandMark Title." However, this assertion fails to attack the district court's reasons for striking the affidavits. It thus cannot demonstrate that the district court erred. "[A] party must plead his claims with sufficient specificity for this court to make a ruling on the merits. [W]e will not assume [a party's] burden of argument and research." *Angel Investors, LLC v. Garrity*, 2009 UT 40, ¶ 35, 216 P.3d 944 (alterations in original) (internal quotation marks and footnote omitted). Because Strand fails to address the basis of the district court's ruling, we reject this challenge.

¶ 18 In the face of having all these affidavits stricken, Strand argues that, as a pro se litigant, he should have been given the leniency to rewrite the affidavits to comply with the rules. It is far from clear that the problems with those affidavits could have been corrected with a mere rewrite. In any event, as mentioned above, we conclude that the district court granted Strand leniency on many occasions. That it chose not to do so here is not an abuse of its discretion. "As a general rule, a party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar. Further, 'reasonable' indulgence is not unlimited indulgence." *Allen v. Friel*, 2008 UT 56, ¶ 11, 194 P.3d 903 (citation and internal quotation marks omitted). We thus conclude that the district court did not abuse its discretion in striking the affidavits.[7]

## III. The District Court Did Not Err in Granting Summary Judgment to Golden Meadows.

¶ 19 We now consider the substantive issues in Strand's case. He maintains that he could not legally be evicted because he held an equitable interest in the Property as the beneficiary of an express trust or a constructive trust, or, alternatively, that he adversely possessed the Property. The district court rejected these contentions and granted summary judgment to Golden Meadows. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Strand argues on appeal that the district court erred in granting summary judgment because genuine issues of material fact existed here. "We review a summary judgment determination for correctness, granting no deference to the [district] court's legal conclusions." *Salt Lake Cnty. v. Holliday Water Co.*, 2010 UT 45, ¶ 14, 234 P.3d 1105 (alteration in original) (internal quotation marks omitted).

### A. Express Trust

¶ 20 Strand concedes that Golden Meadows' predecessor in interest, Nupetco, took ownership of the Property in 1985 following a foreclosure sale. In July 2000, Nupetco conveyed the Property to Allen's company, Log Furniture, Inc. (LFI). At the same time, LFI executed and delivered a promissory note and a trust deed on the Property in favor of Golden Meadows. Eventually, LFI defaulted on its payments and attempted to reorganize under chapter 11 of the Bankruptcy Code. Golden Meadows obtained relief from the automatic stay and foreclosed on the Property. In 2004, Golden Meadows bought the Property at a foreclosure sale, thereby becoming the record title holder.

---

ginal, if any, relevance to the issues before the district court.

**7.** To the extent that Strand challenges the striking of other affidavits, we determine that his claims lack merit, and we decline to address them further. *See State v. Carter*, 888 P.2d 629, 648 (Utah 1995).

¶ 21 Strand alleges that this ostensibly clear chain of title is subject to an express trust pursuant to which each record title holder held the Property in trust for his benefit. He maintains that each of the conveyances was essentially a sham—something Petty "had to do for Uncle Sam." We see no error in the district court's rejection of Strand's claims.

¶ 22 First, Strand claims that he and Petty had an oral agreement that preserved Strand's equitable interest in the Property. This claim fails under the Statute of Frauds. The Statute of Frauds provides that no interest in real property may be conveyed except by operation of law or by deed or conveyance in writing. *See* Utah Code Ann. § 25–5–1 (2007). " 'Statutes of frauds are intended to bar enforcement of certain agreements that the law requires to be memorialized in writing.' " *Stangl v. Ernst Home Ctr., Inc.*, 948 P.2d 356, 360 (Utah Ct.App.1997) (quoting *Colonial Leasing Co. v. Larsen Bros. Constr. Co.*, 731 P.2d 483, 486 (Utah 1986)).

¶ 23 Strand argues that the promissory estoppel exception to the Statute of Frauds applies here and obviates the need for a written document. The promissory estoppel exception to the Statute of Frauds applies only " 'where the promise as to future conduct constituted the intended abandonment of an existing right of the promisor.' " *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, ¶ 14, 100 P.3d 1200 (quoting *McKinnon v. Corporation of Pres. of Church of Jesus Christ of Latter-Day Saints*, 529 P.2d 434, 436 (Utah 1974)). " '[T]he acts and conduct of the promisor must so clearly manifest an intention *that he will not assert the statute* that to permit him to do so would be to work a fraud upon the other party.' " *Id.* (emphasis added) (quoting *McKinnon*, 529 P.2d at 436). In other words, a party "is estopped from asserting the statute of frauds as a defense only [if it has] expressly and unambiguously

waived the right to do so." *Stangl*, 948 P.2d at 361.

¶ 24 Strand contends that the excluded affidavits would have established facts constituting promissory estoppel. However, we have previously affirmed the district court's ruling rejecting the affidavits, and Strand has pointed us to no other evidence of such an agreement. Accordingly, we agree with the district court that no genuine issue of material fact existed with respect to Strand's claim that he held an equitable interest in the Property pursuant to an oral agreement.[8]

¶ 25 Next, Strand alleges that a 1982 agreement memorializes in writing his and Petty's arrangement that Petty would hold the Property, along with two other properties, "in trust for the Strands until such time as Petty's [oil] investment ... was recouped." Strand and Petty did in fact sign an agreement in 1982. However, that agreement contains no such promise. Not only does the agreement not purport to make the Property the subject of an express trust for Strand's benefit, it does not mention the Property. It pertains to an oil drilling and production venture in Wyoming. Accordingly, it does not create an express trust granting Strand a beneficial interest in the Property.

B. Constructive Trust

¶ 26 Strand alternatively argues that he held a beneficial interest in the Property pursuant to a constructive trust. A constructive trust is a highly fact-dependent arrangement. "Courts recognize a constructive trust as a matter of equity where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior." *Wilcox v. Anchor Wate, Co.*, 2007 UT 39, ¶ 34, 164 P.3d 353. In addition, an oral express trust that would otherwise fail under the Statute of Frauds may give rise to a constructive trust

---

8. Our review of the excluded affidavits suggests that they could not, in any event, sustain a promissory estoppel claim. The affidavits contain no allegation that Petty, Nupetco, Golden Meadows, or any other person expressly and unambiguously waived the right to assert a Statute of Frauds defense. Assuming arguendo the truth of the averments in those affidavits, the affidavits at most establish that Petty and Strand had an unwritten wink-and-handshake agreement—not the "express and unambiguous" waiver required under promissory estoppel. Strand's claim is thus precisely the sort the Statute of Frauds exists to prevent.

by operation of law where "the transferor of land intended to create a trust" under one of three conditions identified in the Restatement of Trusts. *See Rawlings v. Rawlings,* 2010 UT 52, ¶¶ 26–28, 240 P.3d 754 (citing Restatement (Second) of Trusts § 45 (1959)). The success of Strand's argument depends on whether Petty and Strand had agreed that Strand would maintain his interest in the Property through a constructive trust.

¶ 27 Strand's argument that there was a genuine issue of material fact again depends entirely on the content of the stricken affidavits. Because we affirm the district court's striking of the affidavits, we also conclude that the district court did not err in concluding that without those affidavits no genuine issue of material fact existed.[9] We therefore affirm the district court's conclusion that Strand is not the beneficiary of a constructive trust in the Property.

### C. Adverse Possession

¶ 28 Finally, Strand argues that he is the true owner of the Property by adverse possession. Our law presumes that "(a) the person establishing legal title to the property has been in possession of the property; and (b) any occupation of the property has been under and in subordination to the legal title." Utah Code Ann. § 78B–2–208(1) (2008). This presumption "may be rebutted by a showing that the property has been held and possessed adversely to the legal title for at least seven years before commencement of the action." *Id.* § 78B–2–208(2). To show that one's possession has been adverse, a claimant "must show that his use and possession of the property has been actual, open and notorious, and continuous for the statutory period. A claimant must also have paid all taxes levied on the property during the statutory period." *Allred v. Allred,* 2008 UT 22, ¶ 17, 182 P.3d 337.

¶ 29 Golden Meadows alleged, and the district court found, that Golden Meadows owned the Property and allowed Strand to occupy it as a tenant. Strand

countered that he occupied the Property by right—specifically, that he was the equitable owner of the Property, either pursuant to an express oral trust, an express written trust, or a constructive trust. Thus, under any theory of the case, Strand occupied the Property with Golden Meadows' permission. "[P]ermissive use cannot result in ... adverse possession." *Campbell v. Box Elder Cnty.,* 962 P.2d 806, 809 (Utah Ct.App.1998). No admitted affidavits, or any other evidence before the district court, support Strand's adverse possession claim.[10]

¶ 30 Strand attempts to circumvent this obvious hurdle by arguing that his occupation of the Property was "notorious[,] adverse[,] and hostile to the *now* claimed interests of Petty." (Emphasis added.) This argument fails because "[a]dverse use rights are not 'acquired' when the adverse use begins; rather, adverse use rights are acquired only after seven years of continuous use." *Otter Creek Reservoir Co. v. New Escalante Irrigation Co.,* 2009 UT 16, ¶ 15, 203 P.3d 1015. Thus, if the adverse use began when Golden Meadows filed this lawsuit, which is when the "now claimed interests of Petty" were first identified, the seven years would begin to run from that moment.

¶ 31 Accordingly, the district court did not err in determining that Strand did not adversely possess the Property or in determining that Strand did not maintain an equitable interest in the Property through either an express or a constructive trust. We therefore affirm the district court's grant of summary judgment to Golden Meadows.

### IV. Strand's Argument Concerning His Rule 59 Motion Is Inadequately Briefed.

¶ 32 Finally, Strand appeals the district court's denial of his rule 59 motion for a new trial. This issue is inadequately briefed because Strand's argument on this point lacks "sufficient development of the argument and citation to legal authority." *Angel*

---

9. Our review of the excluded affidavits suggests that their admission would not likely have altered this result in any event.

10. The excluded affidavits would devastate Strand's adverse possession claim. Their general theme is that Strand occupied the Property with Petty's permission.

*Investors, LLC v. Garrity*, 2009 UT 40, ¶ 35, 216 P.3d 944. Strand does not cite the rule or identify any provision of it that the district court allegedly violated, *see* Utah R. Civ. P. 59. The argument is also largely incoherent. Consequently, we do not address it.

## V. The District Court Did Not Err in Awarding Attorney Fees to Golden Meadows.

¶ 33 Strand challenges the district court's award of attorney fees to Golden Meadows pursuant to Utah Code section 78–36–10. *See* Utah Code Ann. § 78–36–10 (Supp.2007) (renumbered as Utah Code Ann. § 78B–6–811 (2008)). That section allows for "reasonable attorney fees" to be awarded in a suit for unlawful detainer. *Id.* "Whether attorney fees are recoverable is a question of law which we review for correctness." *Dejavue, Inc. v. United States Energy Corp.*, 1999 UT App 355, ¶ 8, 993 P.2d 222 (internal quotation marks omitted).

¶ 34 Strand first argues that Golden Meadows should have been required to apportion fees between its unlawful detainer action and Strand's counterclaim and should not be able to recover fees associated with the counterclaim. Golden Meadows responds that Strand's counterclaims were so intertwined with the unlawful detainer claim that fees incurred in defending against those counterclaims were recoverable under the unlawful detainer statute. Had any of Strand's counterclaims succeeded, Golden Meadows could not have prevailed on its unlawful detainer action.

¶ 35 "[W]hen a plaintiff brings multiple claims involving a common core of facts and related legal theories, and prevails on at least some of its claims, it is entitled to compensation for all attorney fees reasonably incurred in the litigation." *Id.* ¶ 20. This court has repeatedly extended this rule to award attorney fees for counterclaims when the counterclaim was "based on related legal theories involving a common core of facts." *Id.* ¶ 21; *see also Sprouse v. Jager*, 806 P.2d 219, 226 (Utah Ct.App.1991) (allowing attorney fees because foreclosure and counterclaim were "so intertwined"); *Christopherson, Farris, White & Utley, PC v. Pugh*, 2006 UT App 68U, para. 16, 2006 WL 448677 (mem.) (allowing attorney fees for defending a counterclaim that was "inextricably mixed" with the original claim). Here, the legal work performed in responding to Strand's counterclaim was inextricably intertwined with the legal work associated with the initial unlawful detainer action and is therefore appropriately included in the fee calculation.

¶ 36 Strand also asserts that Golden Meadows' fees were unreasonable, listing five points the district court should have considered. However, these objections were not raised at trial and are thus unpreserved. We therefore decline to address them. *See O'Dea v. Olea*, 2009 UT 46, ¶ 18, 217 P.3d 704.

¶ 37 We conclude that the district court did not err in awarding attorney fees to Golden Meadows for both the unlawful detainer action and its defense against Strand's counterclaims. We further conclude that the district court did not abuse its discretion in determining that Golden Meadows' requested fees were reasonable. Golden Meadows seeks attorney fees on appeal. "[W]hen a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) (internal quotation marks omitted). Accordingly, we award to Golden Meadows attorney fees reasonably incurred on appeal and remand to the district court for a determination of the proper amount of the award.

¶ 38 Insofar as Strand endeavors to raise other issues not specifically addressed above, they are not presented with sufficient clarity to permit meaningful consideration.

¶ 39 Affirmed.

¶ 40 WE CONCUR: GREGORY K. ORME and WILLIAM A. THORNE JR., Judges.