2017 UT App 19

# THE UTAH COURT OF APPEALS

DAVID K. GILLETT AND MAJESTIC AIRLINES INC.,
Appellants,
*v.*
BOYD J. BROWN, SENTRY FINANCIAL CORPORATION, AND SFC
AIRCRAFT CORPORATION I,
Appellees.

Opinion
No. 20140682-CA
Filed January 26, 2017

Third District Court, Salt Lake Department
The Honorable L.A. Dever
No. 080921211

Stephen G. Homer, Attorney for Appellants

Christopher M. Ault and Zachary W. Powell,
Attorneys for Appellees Boyd J. Brown and Sentry
Financial Corporation

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE J.
FREDERIC VOROS JR. and JUSTICE JOHN A. PEARCE concurred.[1]

ROTH, Judge:

¶1 This case involves claims of breach of contract and fraud. In March 1995, after David K. Gillett—through his company Majestic Airlines Inc. (collectively, Gillett and Majestic)— defaulted on repayment of a loan to Sentry Financial

---

1. Justice John A. Pearce began his work on this case as a member of the Utah Court of Appeals. He became a member of the Utah Supreme Court thereafter and completed his work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(3).

Corporation (Sentry). Sentry received a substantial partial payment of the balance due from one of the loan's personal guarantors, Boyd J. Brown. Neither Sentry nor Brown disclosed Brown's guaranty payment to Gillett or Majestic. Sentry later commenced an action in the district court against Majestic to collect on the past-due loan, and after the court entered default judgment in Sentry's favor, Sentry liquidated Majestic's assets and certain personal property of Gillett's, all of which had been pledged as security for the loan. Sentry thereafter reimbursed Brown for the guaranty payment he had made. Brown then facilitated the settlement of a dispute over Sentry's handling of the disposition of Gillett's and Majestic's property in the aftermath of the default judgment, which resulted in a mutual release of claims by and among Sentry, Brown, Majestic, and Gillett (the Release).

¶2 Gillett discovered Brown's guaranty payment and Sentry's reimbursement in 2002. Gillett and Majestic thereafter brought a claim of breach of contract against Sentry and claims of fraud and breach of contract against Brown. On appeal, Gillett and Majestic contend that the district court erred in granting summary judgment in favor of Brown and Sentry. We affirm the district court's dismissal of Gillett and Majestic's claims. Sentry and Brown request an award of attorney fees and costs incurred on appeal. We decline to award Sentry and Brown their attorney fees on appeal, but Sentry and Brown are entitled to their costs.

BACKGROUND

¶3 Majestic was a Utah corporation and Gillett was its president and sole owner.[2] In 1994, Majestic found itself in a financial predicament. It owed Textron Financial Corp. (TFC) almost half a million dollars on a loan and was in default. In

---

2. The corporation was dissolved in April 1996.

April 1994, Sentry entered into an agreement with Majestic (the Loan Agreement) to pay off the balance of Majestic's TFC loan and provide a small additional sum to Majestic—a total principal amount of $483,102.43. In return, Majestic agreed to make thirty-six equal monthly payments of $15,779.57 beginning on July 1, 1994, as well as an interim payment on or before that date to cover the period between the signing of the Loan Agreement and July 1. The loan was secured by interests in four cargo aircraft and four fuel trucks, all property of Majestic, as well as by Gillett's pledge of certain personal property of his own. Because Majestic had previously defaulted on its loan with TFC, Sentry required additional assurances—the personal guaranties of Gillett himself and Brown, a mutual acquaintance of both Gillett and Sentry's CEO.

¶4     Majestic failed to make the interim payment as well as several monthly payments, and by March 1995 Majestic had paid only about $57,000 of the amount it then owed Sentry in principal, interest, and other fees under the Loan Agreement. Following Majestic's default, Sentry demanded that Brown fulfill his obligation as personal guarantor by paying $249,964.88 (the guaranty payment) to Sentry. Brown made the guaranty payment in March 1995, but neither Sentry nor Brown informed Majestic of that fact. A few weeks later, Sentry obtained a default judgment against Majestic for the "principal sum of $450,119.70," plus interest and costs. That principal sum did not reflect Brown's guaranty payment. To recover on the default judgment, Sentry arranged for a public auction in October 1995 of the assets Majestic and Gillett had pledged as collateral for the Loan Agreement. At the auction, Majestic bought back four aircraft, and the parties agreed that Majestic's obligation would be reduced by that amount. The proceeds of the auction were otherwise remitted to Sentry, which then reimbursed Brown for his guaranty payment.

¶5     After the auction, Gillett became concerned about Sentry's post-sale handling of the proceeds. He sought an accounting from Sentry of how the auction's proceeds had been applied to Majestic's indebtedness, including whether there was any surplus due to Majestic above what Sentry was owed. In addition, Sentry had held back the bills of sale for the repurchased aircraft, apparently because, by its accounting, Majestic still owed money on the default judgment. Sentry directed Gillett to discuss the outstanding issues with Brown. Around the same time, despite the lack of bills of sale, Gillett and Majestic began to use the aircraft in various business dealings. For example, Majestic disassembled two of the planes and shipped sections of the engines out of state. It also attempted to negotiate leases for two of the aircraft with an aviation company operating out of Kenya.

¶6     By the summer of 1996, Gillett and Majestic still had not received a post-auction accounting of the proceeds from the collateral sale or the bills of sale for the planes, and Gillett contacted Brown, as Sentry had suggested. Brown informed Gillett that Majestic still owed Sentry $150,000 and that Sentry would not permit Majestic to lease the two planes to the Kenyan aviation company. According to Gillett, Majestic cancelled those leases in reliance on Brown's assertions.

¶7     A few months later, Sentry presented Gillett with the Release in an effort to resolve the outstanding disputes. Gillett sought Brown's advice as to whether to sign the Release. Brown informed him that, among other things, Sentry's general counsel wanted to criminally prosecute Gillett personally for disassembling one of the aircraft and shipping the "hot parts" of the aircraft out of state, which Majestic had done believing that it owned the aircraft after the collateral foreclosure sale. As Gillett recounts, Brown advised Gillett to sign the Release and told Gillett that he would "get things worked out with Sentry." In December 1996, Gillett and Sentry signed the Release, which

provided that "Sentry and Gillett mutually release, forever discharge and agree to hold harmless each other, and . . . Boyd Brown, an individual, from any and all claims, demands, damages, actions, counts, causes of action, or suits at law of whatever kind and nature, and from all costs and attorneys' fees."

¶8    More than five years later, in March 2002, Gillett discovered that Brown had made the guaranty payment to Sentry and that Sentry had not reduced Majestic's loan obligation accordingly. In 2007, Gillett and Majestic sued Sentry and Brown, alleging three claims for relief: breach of contract against Sentry; breach of contract against Brown; and fraud against Brown. The 2007 suit was dismissed without prejudice months later for failure to serve the complaint on the defendants within 120 days of filing. *See* Utah R. Civ. P. 4(b). Gillett and Majestic then refiled essentially the same claims against Sentry and Brown in September 2008.

¶9    In the 2008 suit, Gillett and Majestic claimed that Sentry had breached the Loan Agreement by failing to disclose the guaranty payment and commensurately reducing the amount Majestic owed on the loan, by failing to provide Gillett and Majestic with an accounting of the surplus proceeds from the collateral auction, and by colluding with Brown to improperly induce Gillett and Majestic to execute the Release. The 2008 complaint alleged breach of contract against Brown, as well, but also added a fraud claim against him. Gillett and Majestic alleged that Brown had breached the Loan Agreement by "failing to abide by the terms of the [agreement]" and violating the implied covenant of good faith and fair dealing. In addition, they claimed that Brown had made "false and fraudulent statements concerning the status of the outstanding delinquencies" on the loan, which led to the loss of the aircraft and the auction proceeds and finally to Gillett and Majestic's execution of the Release. In particular, they alleged that in

connection with the negotiation of the Release, Brown had made "intentionally misleading and false statements"—namely, that Gillett and Majestic "were still indebted" to Sentry at the time, that Sentry was threatening to criminally prosecute Gillett, and that Gillett and Majestic had no right to lease the two aircraft for use in Africa. They asserted that Brown made these statements to induce them to, among other things, pay Sentry additional money and sign the Release, and that Gillett and Majestic had acted and relied upon these statements to their detriment.[3]

¶10 Gillett and Majestic eventually filed a motion for partial summary judgment "against Sentry . . . only" for "breach of contract . . . committed in violation of the implied covenant of good faith and fair dealing." Sentry opposed the motion, and Sentry and Brown filed a joint cross-motion for summary judgment against Gillett and Majestic. Sentry and Brown asserted that Gillett and Majestic's claims should be dismissed for several reasons, including that Majestic's claims were not within the allowable scope of the "winding up" of its business affairs as a dissolved corporation and that Gillett and Majestic's claims were barred by statutes of limitation as well as by the Release.

¶11 In response to the cross-motions for summary judgment, the district court "dismiss[ed] with prejudice all claims" against Sentry and Brown, effectively denying Gillett and Majestic's

---

3. In their 2008 complaint, Gillett and Majestic also requested a judicial accounting of the auction proceeds and a declaratory judgment interpreting certain provisions of the contractual documents, including the Release. Because we resolve the case by affirming the district court's statute of limitations determinations and Gillett and Majestic do not pursue the accounting claims separately on appeal, we do not address them further.

motion and granting Sentry and Brown's cross-motion. In doing so, the court made several determinations. First, it concluded that, because Majestic was "no longer a viable corporation" and its "winding up period had expired," it lacked standing to "assert any claims." The court determined, however, that Gillett had "the right to assert Majestic's claims" as its successor in interest. The court then determined that all three of the complaint's substantive claims—the breach of contract claim against Sentry and the breach of contract and fraud claims against Brown—were barred. The court concluded that the breach of contract claims were barred on two independent grounds. First, the court determined that the applicable statute of limitations had run on the breach of contract claims. Applying what the court referred to as a "first breach" approach, the court concluded that the statute of limitations on the breach of contract claims began to run in 1995 when Gillett and Majestic defaulted on their obligations to Sentry under the Loan Agreement, a default that occurred before any alleged default by Sentry in connection with the collateral disposition or the Release. The court then determined that the six-year statute of limitations applicable to claims based upon written instruments had expired in 2001, thus barring the breach of contract claims.

¶12 Second, the court determined that the Release barred the breach of contract claims. Though Gillett and Majestic claimed the Release was invalid, the court decided that the statute of limitations on that claim had run its course before the first complaint was filed. Specifically, the court found that the limitations period for Gillett and Majestic's fraud claim, the only claim challenging the validity of the Release, began to run in 2002 when Gillett and Majestic first became aware of the factual basis for their claim. Applying the three-year fraud statute of limitations, the court determined that the fraudulent inducement claim expired in 2005—before Gillett and Majestic filed their first complaint—and therefore that the passage of time barred any challenge to the validity of the Release. As a result, the still-valid

Release precluded Gillett and Majestic's contract claims against all the defendants.

¶13 The court accordingly dismissed with prejudice all claims in the 2008 complaint. Gillett and Majestic filed a combined rule 59(b) motion for a new trial and rule 60(b) motion to set aside the district court's judgment (the post-judgment motions). The district court denied the motions and affirmed its prior ruling granting summary judgment in favor of the defendants, concluding that Gillett and Majestic's "'objections' [were] merely a veiled attempt to take a second bite at the apple."

## ISSUES AND STANDARD OF REVIEW

¶14 Gillett and Majestic now appeal the district court's grant of summary judgment in favor of Sentry and Brown. "We review a district court's grant of summary judgment for correctness." *IHC Health Services, Inc. v. D & K Mgmt., Inc.*, 2008 UT 73, ¶ 15, 196 P.3d 588. And because Gillett and Majestic's post-judgment motions essentially sought reconsideration of the district court's summary judgment decision, to the extent that they purport to separately appeal them, the standard of review is the same. *Cf. State v. Parker*, 872 P.2d 1041, 1044 (Utah 1994) ("In determining the character of a motion, the substance of the motion, not its caption, is controlling.").

## ANALYSIS

¶15 Gillett and Majestic contend that the district court made several errors in dismissing their claims: (1) the district court incorrectly applied the three-year fraud statute of limitations to their breach of contract claims against Sentry and Brown when it should have applied the six-year limitations period applicable to claims based on a written instrument; (2) the court failed to toll the running of the statute of limitations on the claims against

Brown while he resided out of the state; (3) the court erred in ruling that Majestic's claims devolved to Gillett after Majestic's dissolution as a corporation and were not valid corporate "winding up" activities; (4) the court incorrectly applied the "first breach" doctrine to bar Gillett and Majestic's breach of contract claims against Sentry and Brown; and (5) the court failed to recognize disputes of material fact that precluded summary judgment.

¶16 Gillett and Majestic acknowledge that the "winding up" and the "first breach" issues become relevant only if we reverse the district court's dismissal of the breach of contract and fraud claims as time-barred. Indeed, they characterize the district court's conclusions on these points as "peripheral," "unnecessary," and "irrelevant" "[i]f the summary judgment on the 'statute of limitations' bar is affirmed," noting that they have raised these issues on appeal "only to avoid future 'law of the case' problems if the case is remanded for trial." Accordingly, we first consider whether the district court correctly applied the pertinent statutes of limitation to Gillett and Majestic's breach of contract claims against Sentry and Brown and their fraudulent inducement claim against Brown. Because we conclude that the district court correctly ruled that the claims against both defendants are time-barred and that there are no unresolved issues of material fact that preclude summary judgment, we do not reach the merits of either the "winding up" or the "first breach" issue. Lastly, we address Sentry and Brown's request for the attorney fees and costs they have incurred on appeal.

## I. Statutes of Limitation

¶17 A district court's application of a statute of limitations is reviewed for correctness. *Gillmor v. Summit County*, 2010 UT 69, ¶ 16, 246 P.3d 102. Gillett and Majestic argue that the district court erred in applying the pertinent statutes of limitation to dismiss their breach of contract claims against Brown and Sentry and their fraud claim against Brown. Specifically, they argue that

the court correctly tolled the breach of contract claims until the 2002 discovery of Brown's guaranty payment, but that the court then wrongly applied the three-year fraud statute of limitations to those breach of contract claims. They contend that, had the court applied the correct six-year statute of limitations for claims based upon written instruments, *see* Utah Code Ann. § 78B-2-309(2) (LexisNexis 2012), their breach of contract claims would have been timely filed because they filed those claims in 2007, within six years of their discovery in 2002.

¶18    Gillett and Majestic also argue that their claims against Brown—the fraud claim and the breach of contract claim—were timely filed, because Brown has continuously resided out of state at all times relevant to the litigation. Thus, they assert that under Utah Code section 78B-2-104, the section that tolls statutes of limitation in circumstances where the defendant is out of state, the limitation periods on the claims against Brown should never have begun to run.

¶19    We first address the district court's dismissal of the breach of contract claims and then consider whether the district court correctly rejected Gillett and Majestic's argument that the claims against Brown ought to have been indefinitely tolled because he was residing out of state.

A.     Breach of Contract Claims

¶20    Gillett and Majestic argue that the district court incorrectly applied the fraud statute of limitations to their breach of contract claims.

¶21    Utah Code sections 78B-2-305 and 78B-2-309 set out the statutes of limitation applicable to fraud claims and claims based upon "an instrument in writing," respectively. An action based on fraud or mistake "may be brought within three years" from the date of accrual. Utah Code Ann. § 78B-2-305(3) (LexisNexis 2012). An action based "upon any contract, obligation, or liability

founded upon an instrument in writing" can "be brought within six years" of accrual. *Id.* § 78B-2-309(2). "As a general rule, a statute of limitations begins to run 'upon the happening of the last event necessary to complete the cause of action.'" *Russell Packard Dev., Inc. v. Carson*, 2005 UT 14, ¶ 20, 108 P.3d 741 (quoting *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981)). "Once a statute has begun to run, a plaintiff must file his or her claim before the limitations period expires or the claim will be barred." *Id.*

¶22 In limited circumstances, however, "a statute of limitations may be tolled until the discovery of facts forming the basis for the cause of action." *Id.* ¶ 21 (citation and internal quotation marks omitted). Some limitation statutes contain their own tolling provisions, establishing what our supreme court has described as a "statutory discovery rule." *Id.* For example, the fraud statute of limitations expressly provides that "the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud or mistake." Utah Code Ann. § 78B-2-305(3). The supreme court has also recognized an "equitable discovery rule" that can apply where there is no express statutory tolling provision. *See Russell Packard*, 2005 UT 14, ¶ 24. Under the equitable discovery rule, the accrual of a claim may be tolled based upon "the defendant's concealment or misleading conduct" or where there are "exceptional circumstances" making "the application of the general [statute of limitations] rule . . . irrational or unjust." *Id.* ¶ 25 (citation and internal quotation marks omitted).

¶23 Gillett and Majestic assert that the district court correctly tolled their claims against Brown and Sentry until 2002 based on Sentry and Brown's concealment of the guaranty payment but then incorrectly applied the three-year statute of limitations for fraud claims to their breach of contract claims. They argue that the district court somehow conflated the fraudulent nature of the concealment that tolled their claims with the breach of contract

claims themselves and thus applied the wrong limitations period. We disagree.

¶24   In its summary judgment ruling, the district court dismissed all of Gillett and Majestic's claims with prejudice and confirmed that decision in denying the post-judgment motions. While the logic of the district court's summary judgment decision is in places difficult to track, the court clarified its reasoning in its ruling on Gillett and Majestic's post-judgment motion. Reading both the summary judgment and the post-judgment rulings together, it appears that the court dismissed the breach of contract claims against Sentry and Brown on two independent grounds: first, that the claims were time-barred because the six-year statute of limitations expired in 2001, and second, that the Release barred the claims.

¶25   In deciding that the six-year limitations period barred the contract claims, the court reasoned that Gillett and Majestic first breached the Loan Agreement in 1995 by defaulting on their payments to Sentry and that, according to the court's understanding of the "first breach" doctrine, the statute of limitations began to run on the breach of contract claims from the date of that default.[4] In particular, the court stated that

---

4. Under the "first breach" doctrine, "a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform. He can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform." *CCD, LC v. Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366 (citation and internal quotation marks omitted). Because we affirm the district court's dismissal of Gillett and Majestic's claims on other grounds, we do not reach the issue of whether the first breach doctrine can be applied in a statute-of-limitations context as the district court did here.

"Plaintiffs were the first party to breach the contract at issue in 1995 and therefore, the six (6) year statute of limitations expired in 2001." (Footnote omitted.) And in response to Gillett and Majestic's post-judgment contention that "the Court misapprehended (and thus overlooked) the true 'contractually-based' nature of the Plaintiffs' claim (against [Sentry]) and instead improperly converted Plaintiffs' claims to allege 'fraud,' for which a shorter statute of limitations would apply," the court explained as follows: "[T]he contractual claims, i.e., [Gillett and Majestic's] first and second causes of action, were barred by the six (6) year statute of limitations" on the basis that "[Gillett and Majestic] themselves asserted [that] they breached the terms of the [Loan Agreement] in mid-1995 but did not file any suit until June 2007." Thus, contrary to Gillett and Majestic's assertion, the court did not equitably toll the limitations period for the breach of contract claims at all. Rather, it concluded that the statute of limitations applicable to claims based upon written instruments, *see* Utah Code Ann. § 78B-2-309(2) (LexisNexis 2012), applied to those claims, with the limitations period commencing in 1995 and expiring six years later in 2001. In so concluding, the court noted that Gillett and Majestic alleged "they were unaware of Sentry's receipt of Mr. Brown's $250,000 payment" until March 2002, when they first became aware of the guaranty payment. But the court found that "the concealment [at issue] pertains to [the] alleged fraud inducing [Gillett and Majestic] to sign the release in December 1996, which [Gillett and Majestic] alleged to not have discovered until March 2002," and, as a result, it applied the discovery rule in the fraud statute of limitations to toll only the fraud claim against Brown until March 2002.

¶26    Thus, the court did not even purport to toll the statute of limitations on the contract claims, much less apply a fraud limitations period to those claims. Rather the district court seemed to simply bypass consideration of whether the equitable discovery rule ought to toll the breach of contract claims until discovery of the guaranty payment because it concluded that

Gillett and Majestic had first breached the Loan Agreement before the guaranty payment had even been made.

¶27    The second basis for the court's decision to dismiss the breach of contract claims was the operation of the Release. Specifically, the district court concluded that even if the statute of limitations had not expired, the Release barred both breach of contract claims. The court reasoned that Gillett and Majestic's only challenge to the validity of the Release was asserted in their fraud claim against Brown, where they alleged that he had fraudulently induced them to execute the mutual release of all contract claims relating to the Loan Agreement. Having assumed for purposes of summary judgment that Gillett and Majestic did not discover until the deposition of Sentry's CEO that Brown had misled them by, among other things, failing to disclose the guaranty payment, the court tolled the fraudulent inducement claim until March 2002. The court then applied the three-year statute of limitations applicable to fraud claims from March 2002 and determined that, even though the fraud claim was tolled, it had nonetheless expired in 2005, long before the 2007 case was filed.

¶28    Thus, the district court dismissed the breach of contract claims on two independent grounds: first, that they were barred by the applicable statute of limitations; and second, that they were barred by the Release. The court also ruled that the passage of the three-year limitations period barred any challenge to the Release.

¶29    We "will not reverse a ruling of the [district] court that rests on independent alternative grounds where [an] appellant challenges only one of those grounds." *Wm. Douglas Horne Family Revocable Trust v. Wardley/McLachlan Dev., LLC*, 2013 UT App 129, ¶ 9, 304 P.3d 99 (citation and internal quotation marks omitted). Instead, we "may affirm if the [appellant] fail[s] to challenge each of the grounds for the district court's grant of summary judgment." *Id.*

¶30   On appeal, Gillett and Majestic contend that the district court incorrectly dismissed the breach of contract claims against Brown and Sentry on statute of limitations grounds. But they do not acknowledge that the validity of the Release was an independent basis for the court's decision. Indeed, Gillett and Majestic do not even mention the Release in their opening brief, much less challenge the district court's interpretation of its applicability and scope. And in their reply brief, while they acknowledge that the allegation of fraud in the complaint "was for the purpose of challenging the validity of the 'Release' and its use so as to bar [Gillett and Majestic's] claims," they simply reassert without further analysis that the district court "narrowed its actual 'summary judgment' ruling to be on the 'statute of limitations' grounds." Thus, Gillett and Majestic fail to challenge the district court's alternative conclusion that the passage of time rendered the validity of the Release unassailable and that the Release itself barred their breach of contract claims against both Sentry and Brown.

¶31   Accordingly, even if the district court erred in its application of the statute of limitations, as Gillett and Majestic contend, we nonetheless affirm the court's dismissal of the breach of contract claims on the "unchallenged alternative ground of [the operation of the Release] without reaching the merits of that decision." *See id.* ¶ 13.

B.     Fraud Claim Against Brown

¶32   Gillett and Majestic argued below that former Utah Code section 78-12-35[5] acted to indefinitely toll the statutes of

---

5. Section 78-12-35 was renumbered to 78B-2-104 in February 2008 and amended in March 2009 to read:

> If a cause of action accrues against a person while the person is out of the state and the person is not subject to the jurisdiction of the courts of this state

(continued…)

limitation on their claims against Brown because, as a resident of Wyoming, Brown had been absent from the state of Utah since the events that formed the basis of their claim. Section 78-12-35 provided:

> Where a cause of action accrues against a person when he is out of the state, the action may be commenced within the term as limited by this chapter after his return to the state. If after a cause of action accrues he departs from the state, the time of his absence is not part of the time limited for the commencement of the action.

Utah Code Ann. § 78-12-35 (West 2007).

---

(…continued)

> in accordance with Section 78B-3-205, the action may be commenced within the term as limited by this chapter after his return to the state. If after a cause of action accrues the person departs from the state, the time of his absence is not part of the time limited for the commencement of the action unless Section 78B-3-205 applies.

Utah Code Ann. § 78B-2-104 (LexisNexis Supp. 2009). In other words, the references to long-arm jurisdiction under section 78B-3-205 were not added until March 2009. *Compare id.* (LexisNexis Supp. 2009), *with id.* (2008). Gillett and Majestic argued below that the current section 78B-2-104 was not applicable because the litigation commenced before the amendments. And indeed, in their briefing on appeal, although Gillett and Majestic purport to quote section 78B-2-104, they omit altogether the added language that incorporated long-arm jurisdiction concepts into the amended statute. Accordingly, we cite the former version in our discussion.

¶33 As discussed above, Gillett and Majestic asserted two claims against Brown—one for breach of contract and one for fraud. The district court determined in its summary judgment ruling that the Release barred the breach of contract claim, unless the claim alleging that the Release was fraudulently obtained had been timely filed. It then determined that the fraud claim was barred because the applicable statute of limitations had expired in 2005, over two years before Gillett and Majestic filed their 2007 case. The court accordingly dismissed all the claims.

¶34 In their motions following entry of the summary judgment order, Gillett and Majestic contended that the district court's summary judgment ruling on the fraud claim "fails to consider the legal effect of [the out-of-state tolling statute] . . . and [Brown's] essentially-continuous absence from Utah since the mid-1990s." They did not further analyze or explain this contention to the court, however, as Gillett and Majestic failed to submit a memorandum supporting their motion. Nevertheless, in denying the motion, the district court addressed the issue and concluded that the out-of-state tolling statute did not apply to the circumstances in this case.

¶35 First, the court decided that it had jurisdiction to adjudicate the claims against Brown by virtue of the forum selection clauses found in the Loan Agreement, which Brown signed, and Brown's personal Guarantee and Waiver. Both forum selection clauses stated that the parties agreed to resolve all matters in "the exclusive jurisdiction of the Third Judicial District for Salt Lake County, State of Utah." Relying upon *Jacobsen Construction Co. v. Teton Builders*, 2005 UT 4, 106 P.3d 719, the court discussed circumstances in which an enforceable forum selection clause establishes personal jurisdiction over a defendant. In *Jacobsen Construction*, our supreme court held that for a court to have personal jurisdiction over a defendant by way of a forum selection clause, there need be only "a rational nexus

between Utah and the underlying dispute." *Id.* ¶ 32 (citation and internal quotation marks omitted). The district court then determined that the forum selection clauses at issue created a "rebuttable presumption" that it had personal jurisdiction over Brown and that the circumstances in the case established "the necessary rational nexus" between Utah and the matter in controversy.[6] (Citing *Jacobsen Constr.*, 2005 UT 4, ¶ 39.)

¶36    Second, the court determined that the out-of-state tolling statute—whether the 2008 or subsequently amended version— did not apply under the circumstances, and that Gillett and Majestic had "misconstrued the statutory language and . . . the purpose of" the statute. Quoting *Snyder v. Clune*, 390 P.2d 915 (Utah 1964), a case applying the preamendment statute, the court reasoned "'that the objective of [the out-of-state tolling statute] was to prevent a defendant from depriving a plaintiff of the opportunity of suing him by absenting himself from the state during the period of limitation.'" (Quoting *id.* at 916.) The district court then observed that the supreme court, in applying this principle in *Olseth v. Larson*, 2007 UT 29, 158 P.3d 532, determined that, "because defendant was an out-of-state defendant whom plaintiff was unable to locate at the time she attempted to serve her second amended complaint, which then was outside of the applicable statute of limitations, the statute of limitations was tolled." (Citing *id.* ¶¶ 2–7.)

¶37    The district court went on to compare the circumstances in *Olseth* to those in the present case, observing that "[u]nlike the matter in *Olseth*, [Gillett and Majestic] knew that [in] the mid-1990s Mr. Brown relocated his permanent residence . . . to Teton County, Wyoming, where he has continuously maintained his

---

6. We note that it is not clear whether the court viewed the forum selection clauses as providing the court with an alternate, independent basis not to invoke the tolling statute.

permanent legal residence and domicile." (Third alteration in original) (citation and internal quotation marks omitted). The district court also noted that Gillett and Majestic had managed to serve Brown with their complaint in Wyoming and that they had "never claimed that they were unable to locate Mr. Brown in order to appropriately serve him" or that Brown's "absence from Utah deprived them of their ability to timely *commence* the entitled matter." The court accordingly determined that "[t]he fact that Mr. Brown was served in Wyoming and the alleged inconvenience of [Gillett and Majestic] in attempting to timely depose Mr. Brown does not invoke [the out-of-state tolling statute]." Based on this analysis, the court concluded that the claims against Brown were not tolled due to Brown's out-of-state residence.

¶38   On appeal, Gillett and Majestic do not meaningfully engage with the district court's reasoning that the forum selection clauses provided a basis for personal jurisdiction over Brown and that the out-of-state tolling statute did not apply in the circumstances. *See Wing v. Still Standing Stable LLC*, 2016 UT App 229, ¶ 19 (quoting *Golden Meadows Props. LC v. Strand*, 2010 UT App 257, ¶ 17, 241 P.3d 375) (explaining that appellate review is "confined to the trial court's ruling[s]" and rejecting a challenge where the appellant's brief "'fail[ed] to address the basis of the district court's ruling'"); *State v. Cooper*, 2012 UT App 211, ¶ 10, 283 P.3d 1075 (declining to reach an issue in part because the appellant "fail[ed] to address . . . the district court's consideration and rejection of [the issue being appealed] when it was raised in a motion for new trial"); *Duchesne Land, LC v. Division of Consumer Prot.*, 2011 UT App 153, ¶ 8, 257 P.3d 441 (explaining that the appellants had "failed to persuade us that the district court's ruling constituted error" where the appellants had "not addressed the actual basis for the district court's ruling").

¶39 Gillett and Majestic begin their argument on this point by discussing the overall applicability of the out-of-state tolling statute to this case. Their analysis in this regard consists of quoting the statute, reciting the apparently undisputed factual support for the proposition that Brown resided in Wyoming since the mid-1990s events underlying the suit, and then stating that due to Brown's "permanent absence from the state, . . . the statute of limitations effectively never commences or runs" on the breach of contract and fraud claim against Brown. They then conclude by stating that "the District Court's dismissal of [their] claims against [Brown] was in error."[7]

¶40 But the district court explained at some length, based on its analysis of certain language in the statute and prior cases

---

7. Indeed, apart from recounting the factual basis of Brown's absence from the state, Gillett and Majestic's analysis on this point is contained in one paragraph, which reads:

> In this case, Defendant Brown has not resided in Utah on a continuous basis since the 1990s; he (in the mid-1990s or earlier) changed his residence and domicile to the State of Wyoming (Teton County) and has continuously resided there. . . . Thus, due to Brown's permanent absence from the state due to his residence in Wyoming (and/or lengthy half-year annual vacations in Mexico), the statute of limitation effectively never commences or runs. This result—that the statute effectively never runs—is applicable to both the fraud claim (a three-year statute, tolled until discovery) as well as the longer (six year) statute for the breach of contract claims. Thus, the District Court's dismissal of the Plaintiffs' claims against Defendant [Brown] was in error.

(Internal quotation marks omitted.)

interpreting it, why it concluded that the statute did not apply in the circumstances of this case. And Gillett and Majestic do not describe, engage with, or effectively challenge the basis of the court's decision; they critique neither the court's interpretation of the statutory language nor its reading of prior cases applying the statute. Indeed, the entirety of their response to the court's analysis in their opening brief consists of two sentences. After simply noting without further description that the court's analysis of the applicability of the statute is found on "pages 6 thru 8"of its post-judgment motions ruling, they state:

> The District Court's infusion . . . of long arm jurisdiction concepts (namely, that the Plaintiffs knew where Brown resided out-of-state and could have served him, as was ultimately accomplished) does not resolve the situation. The statute—78B-2-[1]04—still tolls the running of the statute, because [Brown] is out-of-state, regardless of whether the Plaintiff knew where [Brown] was.

¶41　Such a conclusory analysis falls short of demonstrating that the district court erred. *See State v. Green*, 2005 UT 9, ¶¶ 11–12, 108 P.3d 710 (declining to address appellant's argument where, "[t]oo often, his legal analysis is little more than a conclusory statement unsupported by analysis or authority"). Although Gillett and Majestic argue that, under the out-of-state tolling statute, the claims against Brown should have been tolled, they do not attempt to meaningfully address the district court's reasoning or explain why the court's determination that their arguments failed under both the original and the amended versions of the out-of-state tolling statute was infirm. *See Golden Meadows Props.*, 2010 UT App 257, ¶¶ 17–18 (explaining that an appellant cannot demonstrate that a district court erred if he or she "fails to attack the district court's reasons" for the decision it made); *see also* Utah R. App. P. 24(a)(9). Rather, in order for us to determine that the district court erred and reverse its decision,

we would have to assume "the burden of argument and research" and, in effect, act as Gillett and Majestic's advocates. *See Hi-Country Estates Homeowners Ass'n v. Jesse Rodney Dansie Living Trust*, 2015 UT App 218, ¶ 5, 359 P.3d 655 (citation and internal quotation marks omitted). We decline to do so. By failing to address the district court's reasoning, Gillett and Majestic have "failed to carry their burden on appeal." *See id.* Accordingly, we affirm the district court's conclusion that the out-of-state tolling statute was inapplicable in the circumstances of this case.[8]

---

8. Gillett and Majestic also contend that all their claims against Sentry and Brown were timely filed in a 2003 case, which the district court overlooked. The 2003 case, they allege, was dismissed in June 2006 and timely refiled under the savings statute in June 2007 and again in 2008. Thus, they argue, their claims were filed well within the statutes of limitation—whether the three-year fraud statute applicable to the Release or the six-year period applicable to the contract claims—under their theory of how the court should have applied that statute. As evidence of the alleged filing, Gillett and Majestic attach a docketing statement for a 2003 case as an addendum to their opening brief. The docketing statement indicates that a civil complaint was filed in September 2003, that Brown and Sentry filed answers, and that the case was dismissed without prejudice for failure to prosecute in June 2006 on the court's own motion. We will not consider this argument. Among other things, as Sentry and Brown point out, Gillett and Majestic did not raise the 2003 complaint in the district court proceedings; rather, they "alleged to the [district] court that this matter was filed in 2007 . . . , and the [district] court confirmed that this matter was first filed in 2007." "[I]n order to preserve an issue for appeal[,] the issue must be presented to the [district] court in such a way that the [district] court has an opportunity to rule on that issue." *438*

(continued…)

## II. Issues of Fact

¶42    Gillett and Majestic contend that there were disputes of material fact that ought to have precluded summary judgment as a matter of law. Gillett and Majestic have identified three questions of fact that they contend were material and disputed: (1) whether Brown continuously resided out of state, (2) whether Majestic's claims against Sentry and Brown fell within the "'winding up' of its corporate affairs," and (3) whether Majestic's "default in making the monthly repayments . . . necessarily constitute[d] 'breach'" of the Loan Agreement in terms of the "'first breach' doctrine." The last two questions do not seem entirely factual and, in any event, implicate issues that we have already decided we do not need to reach. And because we have resolved the question of Brown's absence from the state on legal grounds that do not implicate questions of fact, we do not further address this claim.

## III. Attorney Fees

¶43    Sentry and Brown request an award of attorney fees and costs incurred to defend this appeal. They contend that Gillett and Majestic's brief is deficient under rule 24(k) of the Utah

---

(…continued)

*Main Street v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (first and second alterations in original) (citation and internal quotation marks omitted). Gillett and Majestic have provided no justification for their failure to bring the 2003 litigation to the attention of the district court; indeed, they do not even acknowledge the omission. Further, the bare docketing statement from the 2003 case, even if we were willing to take judicial notice of it, does not establish that the claims filed in 2007 were originally brought in a 2003 complaint which has never been produced.

Rules of Appellate Procedure,[9] and that it is also meritless and frivolous under rule 33.[10] They also contend that they should be awarded costs under rule 34.[11]

¶44　We decline to award attorney fees. "The decision to assess attorney fees under rule 24(k) is a matter of discretion" for the appellate court. *Fullmer v. Fullmer*, 2015 UT App 60, ¶ 27, 347 P.3d 14 (citation and internal quotation marks omitted). And while we are required to order fees if we determine that an appeal is meritless or frivolous under rule 33, we have stated that "[t]he imposition of rule 33 sanctions is a serious matter and only to be used in egregious cases, lest the threat of such

---

9. Rule 24(k) of the Utah Rules of Appellate Procedure provides:
> All briefs under this rule must be concise, presented with accuracy, logically arranged with proper headings and free from burdensome, irrelevant, immaterial or scandalous matters. Briefs which are not in compliance may be disregarded or stricken, on motion or sua sponte by the court, and the court may assess attorney fees against the offending lawyer.

10. Rule 33(a) of the Utah Rules of Appellate Procedure provides that "if the court determines that . . . [an] appeal taken under these rules is either frivolous or for delay, it shall award just damages, which may include single or double costs, . . . and/or reasonable attorney fees, to the prevailing party."

11. Rule 34(a) of the Utah Rules of Appellate Procedure provides in part, "Except as otherwise provided by law, if an appeal is dismissed, costs shall be taxed against the appellant unless otherwise agreed by the parties or ordered by the court; if a judgment or order is affirmed, costs shall be taxed against appellant unless otherwise ordered . . . ."

sanctions should chill litigants' rights to appeal lower court decisions." *Tobler v. Tobler*, 2014 UT App 239, ¶ 47, 337 P.3d 296 (citation and internal quotation marks omitted); *Cooke v. Cooke*, 2001 UT App 110, ¶ 14, 22 P.3d 1249 ("The sanction for filing a frivolous appeal applies only in egregious cases with no reasonable legal or factual basis." (citation and internal quotation marks omitted)).

¶45 While Gillett and Majestic ultimately did not prevail, given the complexity of the factual and legal issues present in this case, we "cannot say that [this] appeal, taken as a whole, presents the egregious case that warrants rule 33 sanctions." *See Tobler*, 2014 UT App 239, ¶ 47. Accordingly, we decline to award attorney fees under rules 24(k) or 33. However, because we have affirmed the district court's dismissal, Sentry and Brown are entitled to their costs under rule 34.

## CONCLUSION

¶46 We conclude that Gillett and Majestic have not demonstrated that the district court's summary judgment ruling was in error. Accordingly, we affirm the district court's dismissal of Gillett and Majestic's claims.

_____